UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-cv-00074-LLK

MICHAEL T.                                                                                                          PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Plaintiff's fact/law summary is at Doc. 13, and the Commissioner fact/law summary is at Doc. 14. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 9].

Plaintiff makes three arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

### The ALJ's decision

In November 2018, Plaintiff filed applications for benefits under Title II and Title XVI of the Social Security Act. [Administrative Record, Doc. 8 at 27]. Plaintiff was last insured for Title II benefits on March 31, 2019. *Id.* at 30.

On January 28, 2021, the ALJ issued the Commissioner's final decision. *Id.* at 27-39. The ALJ found that, as of November 4, 2020 (approximately Plaintiff's fiftieth birthday), Plaintiff became disabled and eligible for Title XVI benefits based on direct application of Rule 201.14 of Appendix 2 of the regulations. *Id.* at 39.

The ALJ denied Plaintiff's disability claims for the closed period from December 7, 2017, when he alleges that he became disabled, through November 3, 2020, in light the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that, during the closed period, Plaintiff did not engage in substantial gainful activity. *Id.* at 20.

Second, the ALJ found that Plaintiff suffered from the following severe, or vocationally significant, impairments: obesity; degenerative disc disease (DDD) with past fusion and radiculopathy; sacroiliitis; anxiety; depression; and coronary artery disease (CAD)-ischemic heart disease with cardiomyopathy. *Id.* at 30.

Third, the ALJ found that Plaintiff did not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 31.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, notwithstanding his severe physical impairments, Plaintiff could:

> … perform sedentary work … except that he [could] perform occasional climbing of ramps/stairs as well as occasional stooping, balancing, kneeling, and crouching … [could] perform occasional pushing/pulling of hand and foot controls with the bilateral upper and lower extremities … [could] perform no crawling and no climbing of ladders, ropes, or scaffolds … should have no exposure to unprotected heights and no more than occasional exposure to vibration and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost.

*Id.* at 33. The ALJ found that, notwithstanding his severe mental impairments, Plaintiff could:

> … understand, remember, and carry out simple, routine instructions … [could] … sustain concentration, completing simple, repetitive, routine tasks … [could] use judgment in making simple work-related decisions consistent with this type of work … require[d] an occupation with an established routine and set procedures as well as minimal changes during workday … [could] work in an environment with no fast-paced production line, assembly line, or quota-driven work; with occasional contact with supervisors and co-workers; and with no contact with the general public.

*Id.* at 33-34.

Fourth, the ALJ found that Plaintiff could not perform any past relevant work. *Id.* at 37.

Fifth, the ALJ found that Plaintiff retained the ability to perform a significant number of unskilled, sedentary jobs in the national economy such as surveillance system monitor and addresser. *Id.* at 38.

**Plaintiff's first argument is unpersuasive.**

First, Plaintiff argues that the ALJ "erred in finding that [he] could perform work at the [unskilled] sedentary level prior to his 50th birthday." [Doc. 13 at PageID.940]. More specifically, Plaintiff argues that the ALJ's mental RFC finding is unsupported in light of the medical opinion of his treating psychiatrist.

On October 1, 2020, at Plaintiff's request, treating psychiatrist Robina Bokhari, M.D., completed the Residual Functional Capacity Questionnaire for Psychiatric Disorders form. [Doc. 8 at 866-70]. In terms of nature, frequency, and length of contact, Dr. Bokhari stated that Plaintiff started to see psychiatrist in our office in 2015 until March 2020. *Id.* at 866. In terms of mental RFC, Dr. Bokhari opined that Plaintiff has:

> Slight to moderate limitation in ability to understand, remember, and carry out instructions.
> Moderate to marked limitation in ability to respond to supervision.
> Marked limitation in ability to respond appropriate to co-workers.
> Severely limited abilities to respond to customary work pressures, perform complex tasks on a full-time basis, and perform simple tasks on a full-time basis.

*Id.* at 869-70. In terms of support for these opinions, Dr. Bokhari stated that Plaintiff reported anxiety/depression for past 5 years after he had to quit his business due to degenerative disease and severe back pain. *Id.* at 870.

The ALJ found that, while Plaintiff had severe mental impairments from December 7, 2017, through November 3, 2020, "Dr. Bokhari's [disabling] opinion is simply not consistent with the evidence of record." *Id.* at 36. Among the inconsistencies noted by the ALJ are the less severe opinions of the Commissioner's non-examining psychological experts and Plaintiff's treatment records, which indicate that, while he "discussed feeling down post [October 2018] back surgery with Dr. Umar" in November 2018, follow-up notes from Jacob Coffee, A.P.R.N., were unremarkable. *Id.* The ALJ further noted that, while Plaintiff reported depression to medical providers, including Dr. Bokhari, "their actual observations

and examination of him show some difference in affect, but overall reflect appropriate interacts with normal behavior, without hallucinations, with normal cognitions." *Id.* at 35.

Because Plaintiff filed his applications for benefits after in November 2018 [Doc. 8 at 27] (after March 27, 2017), the new rules for evaluating medical opinions apply. *See* 20 C.F.R. § 404.1520c ("For claims filed ... on or after March 27, 2017, the rules in this section apply."). Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source such as Dr. Bokhari. *See* 20 C.F.R. § 404.1520c(a). In determining the persuasiveness of a medical opinion, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). But the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). In this case, the ALJ's evaluation of Dr. Bokhari's opinion [Doc. 8 at 36] adequately explained the supportability and consistency factors.[1]

There are two additional reasons why the ALJ properly rejected Dr. Bokhari's disabling medical opinions from October 2020. First, medical records indicate that Plaintiff's anxiety/depression is situational in nature and related to his having to quit his business due to degenerative disc disease and severe back pain. [Doc. 8 at 36, 870]. To be disabling, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Second, Dr. Bokhari did not opine in October 2020 that such limitations existed from December 7, 2017, through November 3, 2020.

**Plaintiff's second argument is unpersuasive.**

---

[1] Even under the old rules, which privilege treating source medical opinions, the Residual Functional Capacity Questionnaire for Psychiatric Disorders form [Doc. 8 at 866-70] completed by Dr. Bokhari was subject to summary rejection as a "check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings." *Ellars v. Comm'r*, 647 F. App'x 563, 566 (6th Cir. 2016). An ALJ "may properly give little weight" to findings on such a form. *Id.*

Second, Plaintiff argues that the ALJ's finding that he can perform a limited range of sedentary work is unsupported "due to the residual issues resulting from his back fusion on October 2, 2018," including "consistent pain which has required pain medications and treatment at a pain clinic." [Doc. 13 at PageID.942].

Where (as here) a claimant alleges disabling pain and other subjective symptoms, the ALJ is required to evaluate the symptoms pursuant to a two-step process formulated by the Sixth Circuit in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). The ALJ must first determine whether there is objective medical evidence of an underlying condition and, if so: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 853. In this case, the ALJ found that, while Plaintiff suffers from physical impairments that could reasonably be expected to produce his pain, the intensity, persistence, and limiting effects of the pain still permit performance of a limited range of sedentary work. *Id.* at 34.

The Commissioner later incorporated the *Duncan* standard into Social Security Ruling (SSR) 16-3p, which mandates that the ALJ consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6. This evaluation is based on seven factors that include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

SSR 16-3p's predecessor, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3. Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there appears to be no substantive change in the Commissioner's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Accordingly, courts continue to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r*, 437 F. App'x 370, 371 (6th Cir. 2011), meaning that claimants seeking to overturn the ALJ's decision still "face an uphill battle," *Daniels v. Comm'r*, 152 F. App'x 485, 488 (6th Cir. 2005). In this case, Plaintiff has not proven that the ALJ was required to find that his back pain precludes even a limited range of sedentary work.

### Plaintiff's third argument is unpersuasive.

Third, Plaintiff argues that the ALJ erred in "failing to consider the side effects of [his] medications." [Doc. 13 at PageID.942].

Dr. Bokhari was asked whether any of Plaintiff's medications have side effects, and she responded yes. When asked to explain, she stated "Lortab [hydrocodone] can decrease CNS [central nervous system] function and effect memory and concentration." [Doc. 8 at 867].

Plaintiff's argument is unpersuasive for two reasons. First, it lacks a factual basis. The ALJ did not fail to consider the side effects of medications. On the contrary, the ALJ repeatedly recognized that Plaintiff's depression and anxiety and medications adversely affect his memory and concentration. *Id.* at 32, 33 referencing 867. Second, as noted above in connection with the prior argument, the type, dosage, effectiveness, and side effects of any medication is but one of seven factors the Commissioner considers in determining the limiting effects of pain and other subjective symptoms. The ALJ was not required to

6

find that Plaintiff's need for Lortab and other medications precludes sufficient memory and concentration to perform even unskilled sedentary work.

### ORDER

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

January 18, 2023

Lanny King, Magistrate Judge
United States District Court